UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RODOLFO PEREZ CALUNGA,

                    Petitioner,                    Case No. 1:26-cv-953

v.                                                 Honorable Paul L. Maloney

KEVIN RAYCRAFT et al.,

                    Respondents.
_____/

## **OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled combined petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will conditionally grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

### **Discussion**

**I.      Procedural History**

In his § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.20.) [1]

---

[1] In addition to filing the § 2241 petition, Petitioner also filed an emergency motion in this action, seeking immediate release. (ECF No. 6.) As set forth in this opinion, the Court will conditionally grant Petitioner's § 2241 petition. In light of this, the entry of the Court's opinion and corresponding judgment moots Petitioner's pending motion.

In an order entered on March 25, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 4.) Respondents filed their response on April 1, 2026, (ECF No. 7), and Petitioner filed his reply on April 6, 2026, (ECF No. 8.).

## II.    Factual Background

Petitioner is a native and citizen of Cuba. (Pet., ECF No. 1, PageID.5; 2024 Form I-94, ECF No. 1-2, PageID.25; 2024 Notice to Appear (NTA), ECF No. 1-3, PageID.27.) Petitioner entered the United States on February 25, 2024, at the San Ysidro California Port of Entry. (2024 NTA, ECF No. 1-3, PageID.27.) Petitioner applied for admission to the United States through the United States Customs and Border Protection mobile application program (CBPOne Program). (Pet., ECF No. 1, PageID.7.)

Department of Homeland Security (DHS) agents issued Petitioner an NTA, charging Petitioner with inadmissibility under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA) because Petitioner was an immigrant "who, at the time of application for admission, is not in possession of a valid unexpired [immigration or travel document]." (2024 NTA, ECF No. 1-3, PageID.30.) Petitioner was scheduled for a master calendar hearing on March 27, 2025, in the Detroit Immigration Court. (*Id*., PageID.27.)

DHS granted Petitioner discretionary temporary parole on February 25, 2024, pursuant to 8 U.S.C. § 1182(d)(5)(A). (Pet., ECF No. 1, PageID.7; 2024 Form I-94, ECF No. 1-2, PageID.25.) Form I-94 states that Petitioner's parole was in effect until February 23, 2026. (Pet., ECF No. 1, PageID.7; 2024 Form I-94, ECF No. 1-2, PageID.25.) Petitioner obtained employment authorization and began working. (Pet., ECF No. 1, PageID.2; Form I-797C, Notice of Action, ECF No. 1-5, PageID.34.)

On February 26, 2025, Petitioner applied for Adjustment of Status under the Cuban Refugee Adjustment Act[2] (CAA), Public Law 89-732 (November 2, 1966). (Form I-797C Receipt Notice, ECF No. 1-4, PageID.32.) On March 28, 2025, Petitioner completed his biometrics appointment in connection with his CAA application. (2025 Form I-797C, ECF No. 1-5. PageID.34.) On June 13, 2025, an Immigration Judge granted Petitioner's motion to terminate removal proceedings without prejudice so he could pursue adjustment of status before the U.S. Citizenship and Immigration Services (USCIS). (2025 Immigration Judge Order, ECF No. 1-7, PageID.38.)

On March 4, 2026, DHS agents conducted surveillance at an apartment complex in Ypsilanti, Michigan, where it was known that noncitizens resided. (2026 Form I-213, ECF No. 7-2, PageID.136.) The DHS agents observed Petitioner enter a truck at the apartment complex. (*Id*.) The agents initiated a vehicle stop by blocking the truck with their vehicles. (*Id*.) After determining that the driver was a citizen and national of Cuba, they detained the driver, Petitioner, and transported him to the ICE Field Office for processing.[3] (*Id*.)

---

[2] To qualify for adjustment under Section 1 of the Cuban Adjustment Act, an applicant must:

    (1) Be a native or citizen of Cuba;

    (2) Be inspected and admitted or paroled into the United States;

    (3) Be physically present in the U.S. for at least 1 year prior to filing for adjustment;

    (4) Be eligible to receive an immigration visa;

    (5) Be admissible to the United States for permanent residence; and

    (6) Merit the favorable exercise of discretion.

Cuban Refugee Adjustment Act (CAA), Pub. L. No. 89-732, 80 Stat. 1161 (1966).

[3] Respondents indicate that Petitioner was encountered while ICE conducted "targeted" surveillance (2026 Form I-213, ECF No. 7-2, PageID.136.) Respondents do not argue that

DHS issued Petitioner a second NTA, charging Petitioner with inadmissibility under § 212(a)(7)(A)(i)(I) of the INA because Petitioner was an immigrant "who, at the time of application for admission, is not in possession of a valid unexpired [immigration or travel document]." (2026 NTA, ECF No. 1-8, PageID.40–43.) Petitioner was scheduled for a master calendar hearing on March 16, 2026, in the Detroit Immigration Court. (*Id*., PageID.40.)

On the same date, DHS served Petitioner with a letter entitled: "Termination of Parole Issued Pursuant to 8 U.S.C. § 1182(d)(5) and 8 C.F.R. § 212.5(e)(2)." Despite Petitioner's Form I-94 stating that his parole was valid until February 23, 2026 (2024 Form I-94, ECF No. 1-2, PageID.25), the March 4th letter states that Petitioner's parole was valid until April 18, 2025.[4] (March 4, 2026 Termination of Parole letter, ECF No. 7-2, PageID.140.) In any event, based on the 1-94, on February 23, 2026—about a week before he was detained--Petitioner's parole expired.

On March 16, 2026, the Detroit Immigration Court entered a "Finding of Removability and Scheduling Order" finding that Petitioner was removable from the United States pursuant to

---

Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c), and there is nothing in the record presently before the Court to suggest that Petitioner was a law enforcement target for any reason other than his status as a noncitizen. (*See id.*)

[4] Respondents do not explain the discrepancy found in the ending dates of Petitioner's parole between the Form I-94 and the March 4, 2026, Termination of Parole letter. But it is clear from the I-94 that Petitioner's parole was originally valid until February 23, 2026. (2024 Form I-94, ECF No. 1-2, PageID.25.) Therefore, on this record Petitioner's parole did not expire by its terms on April 18, 2025. Of course, DHS could have terminated parole and updated the form to reflect a new and earlier expiration date. *See* United States Citizenship and Immigration Services Guidance Website, https://www.uscis.gov/ save/current-user-agencies/guidance/faqs-on-the-effect-of-changes-to-parole-and-temporary-protected-status-tps-for-save-agencies (under "Non-Categorical Parole" heading, select "Is DHS revising the parolee's Form I-94, Arrival/Departure Record, Admit Until Date if parole is terminated early?") ("Yes. If DHS terminates an alien's parole before the expiration date of the parole period, DHS will update the Form I-94, Arrival/Departure Record to reflect the new parole termination date."). But if that is what happened here, there is no record of it.

§ 212(a)(7)(A)(i)(I) of the INA. (Finding of Removability and Scheduling Order,[5] ECF No. 1-10, PageID.47.) The Immigration Court directed Petitioner to file all relief applications by March 30, 2026. (*Id.*, PageID.48.)

On March 30, 2026, the immigration judge took notice that Petitioner "filed a motion to terminate the removal proceedings on March 13, 2026, to pursue adjustment of status pursuant to the Cuban Adjustment Act." (Order of Immigration Judge, ECF No. 7-3, PageID.143.) The immigration judge found that Petitioner "is prima facie to adjust status under the Cuban Adjustment Act and an I-485 has been filed." (*Id.*) The immigration judge found: "that the [removal] case is terminated without prejudice pursuant to 8 C.F.R. Section 1003.18." (*Id.*) As of April 7, 2026, Petitioner remains detained at the North Lake Correctional Facility despite the termination of the removal proceedings.

## III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

---

[5] *Patel v. Tindell*, 810 F.Supp.3d 824, 832 (W.D. Ky. 2005), found that the statute[, § 1225(b)(1)(A)(i)—(iii)] "forbids the expedited removal of noncitizens who have been, at any point in time, paroled into the United States." 810 F.Supp.3d at 832 (citing. *Coalition For Humane Immigrant Rights v. Noem*, 805 F.Supp.3d 48, 58 (D.D.C. 2025)).

IV.    **Merits Discussion**

A.    **Exhaustion**

Respondents argue that the Court should deny Petitioner's request for habeas corpus relief because Petitioner has not exhausted his administrative remedies. The Court declines to enforce the doctrine of prudential exhaustion against Petitioner, and even if the Court were to conclude that exhaustion is warranted, the Court concludes in the alternative that waiver of exhaustion is appropriate, for the reasons set forth in the Court's exhaustion analysis in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *2–3 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *2–4 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *2–4 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *2–3 (W.D. Mich. Dec. 12, 2025).

Accordingly, the Court will proceed to address the merits of Petitioner's § 2241 petition.

B.    **Statutory Basis for Petitioner's Detention**

Petitioner contends that Respondents have violated the INA by concluding that Petitioner is detained pursuant to the mandatory detention provisions set forth in 8 U.S.C. § 1225(b)(2). Respondents, however, contend that Petitioner meets every element for detention under § 1225(b)(2), and that the statute's structure and history support Respondents' interpretation.

The Court concludes that § 1226(a), not § 1225(b)(2)(A), governs noncitizens, such as Petitioner, who have resided in the United States and were already within the United States when apprehended and arrested for the reasons set forth in the Court's statutory analysis in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *3–6 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *4–6 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577,

6

at \*4–7 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at \*3–6 (W.D. Mich. Dec. 12, 2025).[6]

### C.      Fifth Amendment Due Process Considerations

Petitioner also argues that his detention violates the Fifth Amendment's Due Process Clause. Respondents counter Petitioner's arguments by stating that Petitioner has received notice of the charges against him, has access to counsel, may attend hearings with an immigration judge, has the right to appeal the denial of any request for bond, and has been detained by ICE for a relatively short period of time.

The Court concludes that Petitioner's current detention under the mandatory detention framework set forth in § 1225(b)(2)(A) violates Petitioner's Fifth Amendment due process rights for the reasons set forth in the Court's constitutional analysis in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at \*6–8 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at \*7–8 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at \*7–9 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at \*6–8 (W.D. Mich. Dec. 12, 2025).

### V.      Other Claims and Other Forms of Relief

Because the Court will grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

---

[6] The Court is aware of *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), which was recently issued by the United States Court of Appeals for the Fifth Circuit, and *Avila v. Bondi*, No. 25-3248, --- F.4th ----, 2026 WL 819258 (8th Cir. Mar. 25, 2026), which was recently issued by the United States Court of Appeals for the Eighth Circuit. At this time, these non-binding cases do not change the Court's analysis.

## VI.    Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action, and they seek the dismissal of all of the other named Respondents.[7]

The Court concludes that the Detroit ICE Field Office Director is not the only proper Respondent for the reasons set forth in the Court's analysis of the same argument in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *8–9 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *8–9 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *9–10 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *9–10 (W.D. Mich. Dec. 12, 2025).

To ensure that this Court's orders regarding a hearing or release will bind at least one Respondent with authority to act in the event that Petitioner is transferred out of the Western District of Michigan, the Court will retain the Detroit ICE Field Office Director and the Secretary for the Department of Homeland Security as Respondents. The Court will dismiss the Department of Homeland Security, the United States Attorney General, and the Executive Office for Immigration Review as Respondents.

### Conclusion

For the reasons discussed above, the Court will enter a judgment conditionally granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days of the date of this Court's opinion and judgment with notice to the Parties as soon as practicable, no later than 24 hours prior to the scheduled hearing, or, in the alternative,

---

[7] The Warden of the North Lake Processing Center was terminated as a Respondent in the March 25, 2026 Order to Show Cause. (Order, ECF No. 4, PageID.72.)

immediately release Petitioner from custody.[8] The Court will also order Respondents to file a status report within six business days of the date of this Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment. The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was granted, the conditions of the bond, or if bond was denied, the reasons for the denial. Further, the Court will dismiss the Department of Homeland Security, the United States Attorney General, and the Executive Office for Immigration Review as Respondents.

Dated:    April 23, 2026                             /s/ Paul L. Maloney
                                              Paul L. Maloney
                                              United States District Judge

---

[8] This Court has adopted a standard practice of requiring such a hearing within five business days, even if the Petitioner requests a deadline that is shorter or longer or only release.